IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CASE NO.: 2:23-cr-00071(3) |
| Plaintiff, | : | |
| | : | CHIEF JUDGE MARBLEY |
| vs. | : | Magistrate Judge Deavers |
| | : | |
| WALTER A. THOMAS, | : | |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court on the Government's Motion for Review and Revocation of Release Order. (ECF No. 37). On May 9, 2023, Magistrate Judge Deavers ordered Defendant Walter Thomas to be released pending trial. (ECF No. 36). In its Motion filed on May 10, 2023, the Government asserts that this Court should review and revoke that Order (hereinafter, the "Release Order"). (ECF No. 37). The Motion also requested a stay of the Release Order until this Court resolves the Government's request. (*Id*.). This Court accordingly entered the stay on May 11, 2023. (ECF No. 40). This Court held an arraignment hearing on May 19, 2022, during which the parties discussed their positions on the Release Order.

For the reasons set forth below, the Government's Motion is **GRANTED**. (ECF No. 37).

**I.  BACKGROUND**

**A. Factual Summary of the Instant Offense**

On March 28, 2023, an arrest warrant was issued for Mr. Thomas on a multi-defendant indictment charging him with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) and 2 (Counts 4 and 5). (ECF No. 6 at 2–3). Count 4 charged

1

Mr. Thomas with possessing both a 9mm caliber Ruger Model P95 pistol and a .40 caliber Sig Sauer Model P250 pistol along with ammunition. (*Id*. at 2). Count 5 charged Mr. Thomas with possessing a .223 caliber Anderson Manufacturing Model AM-15 rifle along with ammunition. (*Id*. at 3). According to the Government, Mr. Thomas owned these weapons and sold them in partnership with co-defendant Raymond Small to an agent working undercover for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (ECF No. 37 at 2).

The United States Probation and Pretrial Services Office produced a Presentence Investigation Report ("PSR") detailing Mr. Thomas's criminal history and other relevant history on his personal life, health, and finances. (ECF No. 32). The PSR indicated that Mr. Thomas worked in various industries following his release from prison in December 2016, including construction and home improvement/inspection. (*Id*. at 2). It also detailed an extensive criminal history:

- January 1996—drug trafficking and drug abuse (one year of suspended incarceration and one year of probation; multiple probation violations and subsequent probation extensions until termination in December 1999)
- September 1999—trafficking in cocaine (seven months of incarceration) and possession of drugs (*noelle prosequi*)
- November 1999—possession of drugs (seven months of incarceration running concurrently with the September 1999 sentence) and preparation of drugs for sale (*noelle prosequi*)
- March 2001—possession of drugs (one year probation and a subsequent probation extension until probation was ultimately terminated in May 2003) and possessing criminal tools (*noelle prosequi*)
- December 2002—open container (credit for time served and a fine)
- January 2007—voluntary manslaughter (ten years of incarceration followed by a five-year parole sentence which started in December 2016)
- Undated—one conviction for fleeing traffic, five convictions for twelve instances of driving under suspension/without a driver's license. These offenses include six failures to appear and one failure to pay fines/costs.

(*Id.* at 3–4).

The PSR opined that Mr. Thomas poses a risk of non-appearance in court given his prior failures to appear in other proceedings. (*Id*. at 4). The PSR also concluded that Mr. Thomas poses a risk of danger to the community given the nature of the instant offices, his criminal history which includes prior drug offenses and crimes of violence, and prior probation violations. (*Id.*). The PSR recommended nonetheless that Mr. Thomas be released on an own recognizance bond subject to supervision by the Pretrial Services Office and the following release conditions:

1. Submit to supervision and report for supervision to the Pretrial Services Officer;
2. Avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to: co-defendant;
3. Not possess a firearm, destructive device, or other dangerous weapons. All firearms in the home in which the defendant resides to be removed and verification by the defendant provided by the Pretrial Services Officer.

(*Id*. at 5).

### B. Detention Hearing

Judge Deavers held a detention hearing on May 9, 2023. (ECF No. 35). In the hearing, the Government relied primarily upon the allegations in the indictment and Mr. Thomas's criminal history to argue for his continued detainment pending trial. The Government noted that Mr. Thomas was indicated in the instant case for selling firearms—including either "pistols or semiautomatic handguns" and "at least one rifle"—to an undercover ATF agent. The Government also indicated that Mr. Thomas's criminal record contained "three prior drug related convictions, two of which were drug trafficking," a dismissed domestic violence charge, and a charge of "aggravated murder" with a firearm to which he pled guilty. Because the PSR states that the 2007 "aggravated murder" conviction is actually for "voluntary manslaughter," this Order hereinafter refers to the offense as such. (ECF No. 32 at 4).

Defense counsel responded that Mr. Thomas obtained the firearms at issue in the instant proceeding for personal protection, deciding to sell them when his wife demanded their removal from the home. Defense counsel then provided an explanation of the facts underlying Mr. Thomas's voluntary manslaughter conviction. According to defense counsel, Mr. Thomas was the victim of an attempted carjacking perpetrated by his best friend's nephew. Defense counsel represented that the perpetrator shot Mr. Thomas twice during the attempted carjacking, at which point Mr. Thomas returned fire and killed him. Defense counsel then disclosed that Mr. Thomas only pled guilty to the charge because "he didn't like the look of the jury," given that "[i]t didn't appear to be a fair cross section of the community to him." Defense counsel shared that Mr. Thomas is employed as the owner of two businesses; has a son scheduled to be released shortly into his custody; and has a five-year-old daughter who was scheduled to undergo kidney surgery on May 22, 2023.

In her deliberation, Judge Deavers considered the arguments advanced by both sides. Judge Deavers first noted the seriousness of Mr. Thomas's alleged offenses, including the fact that they "involve[] a person who is prohibited from having guns actually selling them." Judge Deavers also credited Mr. Thomas's explanation of his conduct and the fact that the PSR recommended release. Having balanced the competing considerations presented by the parties, Judge Deavers ordered Mr. Thomas's release subject to supervision by the Pretrial Services Office. Pursuant to the Government's request, Judge Deavers stayed the Release Order for 24 hours to allow the Government to consider whether to appeal it.

### C. The Government's Motion for Reconsideration of the Release Order

On May 10, 2023, the Government filed its Motion for Review and Revocation of Release Order. (ECF No. 37). On the following day, this Court ordered the Release Order to be stayed until it resolves the Government's Motion. (ECF No. 40).

### D. The Arraignment Hearing

On May 19, 2023, this Court held an arraignment hearing during which the parties addressed the Government's Motion. (ECF No. 43). The Government argued that this Court should overturn the Release Order and order Mr. Thomas to be detained pending trial.

After noting that the PSR suggests that Mr. Thomas is a potential flight risk, the Government focused its argument on Mr. Thomas's potential danger to the community if released. Specifically, the Government contended that the PSR failed to give proper weight to Mr. Thomas's 2007 voluntary manslaughter conviction given that both that and the instant alleged offense involve firearms. Mr. Thomas responded that his voluntary manslaughter conviction is too old to be afforded significant weight in determining whether he should be released pending trial. He also contended that his numerous failures to appear in previous court proceedings were likewise too old to factor significantly into the instant proceedings.

After considering the parties' arguments, this Court concluded that no available conditions of release would ensure Mr. Thomas's appearance in court proceedings and the safety of the community. Consequently, this Court ordered Mr. Thomas to be detained pending trial and advised the parties that this written opinion would follow. (*Id.*).

## II. STANDARD OF REVIEW

This Court reviews a magistrate judge's detention order *de novo*. *United States v. Ledbetter*, No. 2:14-CR-127, 2015 WL 5047994, at *1 (S.D. Ohio Aug. 27, 2015) (Marbley, J.). Sections 3142 and 3145 of title 18, United States Code, instruct whether pre-trial release is proper.

If a defendant is ordered to be released by a magistrate judge, "an attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145. Under 18 U.S.C. § 3142, a defendant shall be released pending trial as long as conditions can be set that will reasonably assure the defendant's appearance and community safety. In other words, to justify detaining the defendant pending trial, this Court must find that no set of conditions adequately control the risk of flight or danger that would result from release. *Id.* §§ 3142(b), (e); *United States v. Hodge*, No. 2:17-CR-0035, 2017 WL 1546483, at *2 (S.D. Ohio May 1, 2017) (Marbley, J.).

The relevant factors in determining whether there are conditions of release that will reasonably assure the defendant's appearance without jeopardizing the safety of the community are as follows: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). This Court has previously noted that 18 U.S.C. § 3142(e) contains a rebuttable presumption that adequate release conditions cannot be devised for defendants charged with serious drug and firearm offenses. 18 U.S.C. § 3142(e); *Hodge*, 2017 WL 1546483, at *2.

### III. LAW & ANALYSIS

In its Motion, the Government argues that Judge Deavers failed to give proper weight to Mr. Thomas's prior criminal history and accused offense conduct when she ordered his release. The Government emphasizes the large capacity of the magazines that Mr. Thomas allegedly sold— a factor considered by the United States Sentencing Commission to justify harsher sentencing. The Government also contends that the PSR discloses facts warranting against Mr. Thomas's release, including his prior failures to appear for court hearings, his probation violations, and his several convictions for violent and drug-related crimes. In fact, the Government reasons, Mr. Thomas had been released from state supervision for under a year before committing the instant alleged offenses. Recognizing that Mr. Thomas's last conviction occurred in 2007, the Government counters that his recent criminal activity is limited mostly because he was incarcerated for most of the last 16 years. The Government also submits a police report from the 2007 voluntary manslaughter case in which police indicated their belief that "Mr. Thomas first introduced his weapon into this fight." (ECF No. 42). Mr. Thomas's voluntary manslaughter conviction, the Government emphasizes, involved a killing committed using a firearm.

Mr. Thomas responds that Judge Deavers appropriately issued the Release Order after considering both parties' evidence. Mr. Thomas contends that the Government does not here provide any new evidence indicating that the Release Order was issued in error. According to Mr. Thomas, the relevance of his convictions and previous failures to appear is lessened by their old age.

#### A. Nature and Circumstances of the Offense Charged

Under 18 U.S.C. § 3142(g), the Court first considers "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591,

7

a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).

The offenses charged in this case are two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) and 2. Although the Government does not allege that the firearms in question were used in a dangerous or threatening manner, the possession and distribution of a firearm by a prohibited individual is a serious offense that weighs against release.

In *Hodge*, this Court ordered the defendant, Kirtley Hodge, to be detained pending trial although the PSR recommended his release. 2017 WL 1546483. In that case, Hodge had been charged with the illegal possession of firearms and the possession and distribution of narcotics. *Id*. at *2. In its analysis, this Court dismissed as irrelevant Hodge's contentions that the weapons were never used. *Id.* Instead, this Court determined that Hodge's mere possession of firearms as a felon weighed heavily against his release. *Id.* This Court's ultimate decision to detain Hodge, however, was also based on other considerations. This Court determined that Hodge posed a risk of flight and of continued drug distribution based on the record evidence of Hodge's drug distribution activity (comprised of a significant quantity of narcotics and an inexplicably large sum of money that were found in Hodge's home) and Hodge's previous attempts to flee from arrest. *Id*. at *2–3.

In this case, the Government has charged Mr. Thomas with the possession and distribution of three firearms and ammunition. Like the defendant in *Hodge*, Mr. Thomas is not accused of using the firearms—however, his possession and distribution of the weapons as a felon similarly weigh against his release. Mr. Thomas is additionally like the defendant in *Hodge* in that he attempted to avoid detention in previous instances. This Court is also troubled by the Government's accusation that Mr. Thomas attempted to sell weapons to an unknown buyer with unknown motivations. In this instance, however, the unknown "buyer" was an undercover ATF

agent. This Court's concern is not eased by Mr. Thomas's insistence that he only sold the firearms to comply with his wife's demand that he remove the firearms *he already possessed* from their home. Considering the nature and circumstances of Mr. Thomas's alleged offenses, this factor weighs against release.

### B. Weight of the Evidence

This Court next considers the "weight of the evidence against" Mr. Thomas. 18 U.S.C. § 3142(g)(2). As explained by the Sixth Circuit, "the weight of evidence against the person 'deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community.'" *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (quoting *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

This Court first considers the weight of the evidence with respect to Mr. Thomas's potential flight risk. The PSR contains facts which both support and undermine Mr. Thomas's contention that he does not pose a flight risk. On one hand, the PSR notes that Mr. Thomas has lived in Ohio his entire life. (*Id.* at 1). Most of his family resides in Ohio. (*Id.*). Mr. Thomas has a wife and three children, one over whom he is in the process of gaining custody. (*Id.* at 2). He has significant assets in Ohio, including a residence valued at $680,000 and a late-model vehicle valued at $60,000. (*Id.*). To mitigate the risk of non-appearance, the Release Order requires Mr. Thomas to surrender his passport to the Court and to refrain from obtaining any additional passports or international travel documents. (ECF No. 36 at 2). On the other hand, the PSR reveals that Mr. Thomas has one conviction for fleeing a traffic stop; six failures to appear; and one failure to pay fines/costs. (ECF No. 32 at 4). Based on this history, the PSR concludes that Mr. Thomas poses a risk of non-appearance in a court proceeding. (*Id.*). Contrary to the parties' contentions, this Court is not convinced that the mere passage of time renders irrelevant Mr. Thomas's extensive history of

9

failing to appear for court proceedings. The weight of the evidence concerning Mr. Thomas's potential flight risk weighs against his release.

This Court next considers the weight of the evidence with respect to Mr. Thomas's potential danger to the community if released. On this point, the Government's contentions primarily hinge upon "the ongoing danger to the community evidenced by Thomas' criminal history and the new firearms offenses." (ECF No. 37 at 5). The Government's evidence includes the documentation of Mr. Thomas's lengthy criminal history provided by the PSR. The Government focuses upon the fact that Mr. Thomas used a firearm in the commission of the voluntary manslaughter for which he was convicted in 2007. Mr. Thomas responds that his criminal history is too old to be considered and that he has not had a listed conviction since his release from incarceration on December 22, 2016.

A wealth of evidence demonstrates that Mr. Thomas's release would endanger the community: Mr. Thomas's prior conviction for voluntary manslaughter; his numerous prior drug offenses; his multiple prior offenses involving firearms; and his history of violating probation. Although Mr. Thomas's position is that his guilty plea for voluntary manslaughter was a strategic decision, his conviction is as valid as if he were convicted by a jury. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (explaining that "a plea of guilty is more than an admission of conduct; it is a conviction.").

Given Mr. Thomas's demonstrated dangerousness and his history of failing to appear for court proceedings, this Court finds that this factor weighs against release.

### C.  Mr. Thomas's History and Characteristics

This Court next considers "the history and characteristics of the person," including the following:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

18 U.S.C. § 3142(g)(3).

Mr. Thomas is 46 years old and has no stated physical or mental health concerns aside from an asthma diagnosis. (ECF No. 32 at 1–2). Mr. Thomas appears to maintain strong familial ties, with the PSR noting that he has been residing in a household with his wife and three children. (*Id.* at 1). He has a co-parenting arrangement for a daughter from a prior relationship and is attempting to gain custody of his son. (*Id.* at 2). Mr. Thomas advised that he is self-employed and owns two companies—a handyman company and a home inspection company. (*Id.*). The PSR indicates that Mr. Thomas does not have any apparent or stated issues with substance abuse. (*Id.*).

Mr. Thomas also submits four letters (the "community letters") from family and professional contacts supporting his release. The first letter, coming from Mr. Thomas's wife, reasons that Mr. Thomas's release is warranted by his demonstrated post-release rehabilitation and community involvement. Specifically, Mrs. Thomas cites Mr. Thomas's professional successes and ambitions, his role in the household as the father of four biological children and two "bonus" children, and his conviction-free criminal record following his December 2016 release from incarceration. The other three letters, all from professional references, attest to Mr. Thomas's reliability, professionalism, integrity, and dedication to his family. This Court notes the positive

11

impact of Mr. Thomas's supportive evidence and commends him for his apparent dedication to his family, his community, and his work. But this Court's analysis must consider other factors beyond Mr. Thomas's familial and community ties and his employment history.

This Court next looks to Mr. Thomas's criminal history and his "record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). As Mr. Thomas argues, he has not been convicted for any violent or drug-involved conduct in more than 15 years. Mr. Thomas's argument that his past history therefore holds limited relevance is undercut by the fact that he was incarcerated for most of the period between his last conviction and his arrest for the instant alleged offense. This Court thus finds continued relevance in Mr. Thomas's history of drug- and weapons-related offenses; his numerous violations of his probation; and his multiple failures to appear in previous court proceedings.

This Court has considered Mr. Thomas's supportive evidence on this prong, including the community letters. The positive impact of Mr. Thomas's evidence, however, is outweighed by the negative impact of the other relevant factors. Given Mr. Thomas's extensive criminal history and his history of non-appearance in court proceedings, this factor thus weighs against release.

### D. Potential Danger to the Community

This Court last considers "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Considering the same factors that this Court must weigh on this prong, the Pretrial Services Office recommended that Mr. Thomas be released. (ECF No. 32). With respect to the hard work of the Pretrial Services Office in devising its recommendation and crafting a proposed release plan, this Court disagrees.

The accused offense in this case is serious. Mr. Thomas is accused of possessing and distributing firearms and ammunition despite being a prohibited individual. Mr. Thomas's criminal

history is lengthy. It also includes several probation violations. Although Mr. Thomas's last conviction occurred in 2007, his incarceration spanned most of the time since his most recent conviction. This Court also cannot emphasize enough that Mr. Thomas's 2007 conviction resulted from a death caused by his use of a *firearm*. It is Mr. Thomas's alleged continued engagement with *firearms* for which he now finds himself in yet another criminal proceeding.

This Court is not persuaded that the conditions proposed by the Probation Office would reasonably assure Mr. Thomas's appearance and mitigate any potential danger to the safety of the community. Having found that all four factors counsel against Mr. Thomas's release, this Court finds that detention is necessary to assure his appearance in court and to guarantee the safety of the community.

## IV.     CONCLUSION

For the foregoing reasons, this Court **REVERSES** the Magistrate Judge's Order of Release Pending Trial (ECF No. 26), thereby **GRANTING** the Government's Motion for Review and Revocation of Release Order (ECF No. 37). This Court's stay of the Release Order is hereby **LIFTED**. (ECF No. 26). Mr. Thomas is **ORDERED DETAINED** pending his trial.

**IT IS SO ORDERED.**

                                                   **ALGENON L. MARBLEY**
                                                   **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  June 12, 2023**